UNITED STATES, Appellee

v.

JESSIE L. BAGUEX, Private First Class, U. S. Army, Appellant

2 USCMA 306, 8 CMR 106

307

[black redaction box]

No. 699

Decided March 13, 1953

[black redaction box]

LT. COL. George M. Thorpe, U. S. Army, for Appellant.
LT. COL. Thayer Chapman, U. S. Army, and CAPT. Irvin M. Kent, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

The accused in this case was tried by general court-martial at Bamberg, Germany, on a specification alleging premeditated murder, proscribed by Article 118 (1) of the Uniform Code of Military Justice, 50 USC § 712. He was convicted of unpremeditated murder in violation of the same Article. The convening authority approved the findings and sentence and a board of review has affirmed. Further review was granted by this Court on petition of the accused, limited, however, to the matters considered hereafter.

An unusually extensive recital of facts is required by the nature of the questions raised. Accused and two companions were drinking in a gasthaus in Bamberg, Germany. The deceased, Nylund, approached their table. He was invited to join the party, ordered cognac, and, when he had been served, left for another table. Shortly thereafter, he returned to the accused and his friends, and stood in conversation with them for a few moments. Suddenly, and without apparent provocation, Nylund slapped the accused's face. Accused directed him to sit down, and warned him of the probable consequences of a repetition of this conduct.

When it appeared that the incident had ended, Nylund reopened the controversy by inviting accused "outside." Accused arose and proceeded to accept the invitation, but, restrained by friends, resumed his seat. Nylund then characterized him as "chicken." Accused related that at this point he "counted to ten" silently. The goading by Nylund continued, and accused began once more to count, this time aloud, ticking off the numbers on his fingers. Mockingly, Nylund took up the count. This, accused said, was "too much." Pushing past his friends, he left the room with Nylund—but, during their conversation outside, convinced the latter that there was no good reason for the two to come to blows. Thereupon they reentered the gasthaus. As he rejoined his friends, accused was asked by one of them for an account of what happened outside. He replied, "Nothing, and it's a good thing because I would have stomped his butt." Nylund, unfortunately, overheard this conversation and promptly invited accused to "stomp it" if he could. The two once more went outside, and accused again —but unsuccessfully—attempted to placate Nylund. When the latter grasped his shirt, accused swung, floored him, and kicked or stamped upon his pros-

308

trate foe's face and head repeatedly—in fact, until drawn away by a friend. Leaving Nylund lying on the pavement, accused and his friend left the premises, the companion having learned that military police had been summoned. Nylund died shortly thereafter as a result of the severe beating administered by accused. It is important to note that accused denied any sort of recollection of events from the moment Nylund grasped his shirt until drawn away by his companion.

At the conclusion of the evidence and following closing arguments by counsel, the law officer undertook to instruct the members of the court as required by Article 51(c) of the Code, supra, 50 USC § 626, and Manual for Courts-Martial, United States, 1951, paragraph 73. In charging on the offense, he stated only the elements of premeditated murder. At the conclusion of the instructions, defense counsel requested that the court be instructed as to lesser offenses included within that charged. Thereupon the law officer responded:

"The court is advised that among the lesser included offenses of the offense charged are murder without premeditation, voluntary or involuntary manslaughter, assault, assault and battery, aggravated assault, assault with intent to commit murder, assault with intent to commit voluntary manslaughter, negligent homicide. I should like to call the court's attention to the discussion of the offense of murder discussed in paragraph 197, Manual for Courts-Martial, beginning at page 351, and the discussion concerning manslaughter appearing in paragraph 198 of the Manual for Courts-Martial, commencing on page 353. However, my calling the court's attention both to the lesser included offenses and the discussion in the manual concerning some of those offenses should not be taken in any way as an indication of the feelings of the law officer regarding such findings. I have purposely omitted giving the court a detailed discussion of these offenses feeling that the Manual itself and the knowledge of the court would be sufficient. If the court desires any instruction as to any of these offenses or any of the elements of the offense, I should prefer that the court ask it now."

Palpably this was inadequate instruction, for no attempt whatever was made to set out the *elements* of lesser offenses, as required by applicable Code and Manual provisions, as interpreted and applied by this Court in many opinions heretofore. United States v. Quinsenberry (No. 329), 5 CMR 98, decided September 9, 1952. However, whether this omission constitutes error must, of course, depend on whether there was necessity for instruction concerning lesser offenses. This, in turn, must depend on whether guilt of any lesser offense or offenses was fairly raised by the evidence adduced at the trial as a reasonable alternative to that charged. United States v. Clark (No. 190), 2 CMR 107, decided February 29, 1952; United States v. Roman (No. 191), 2 CMR 150, decided March 19, 1952; United States v. Banks (No. 382), 4 CMR 71, decided July 24, 1952; United States v. Stout (No. 497), 5 CMR 67, decided August 27, 1952.

Without hesitation we hold that unpremeditated murder was raised by the evidence before the court-martial as a reasonable alternative to the premeditated offense specified. To establish premeditation the prosecution must demonstrate a "consciously conceived . . . specific intent to kill." Manual, supra, paragraph 197d. On the record before us, the court might reasonably have concluded that premeditation had not been shown, but that accused was, on the evidence, guilty of unpremeditated murder only. An instruction on the elements of that offense, therefore, should have been given. The fact that accused was in fact convicted of unpremeditated murder, in the absence of instruction thereon, does not, in the circumstances of this case, purge the record of instructional failure and the prejudice deemed to emanate therefrom. United States v. Clark, supra.

In addition, we are sure that the evi-

dence before the trial court here might reasonably support a finding that, although accused intended to kill, he acted "in the heat of sudden passion caused by adequate provocation," and was guilty, therefore, of voluntary manslaughter in violation of Article 119 (a), of the Code, 50 USC § 713. Involuntary manslaughter, however, was not raised as a reasonable alternative, for even if accused did not entertain an intent to kill, he most assuredly intended to inflict great bodily harm. See Uniform Code, Article 119(b), supra. In expressing these views, we are by no means to be understood as voicing an opinion on the merits as such. That, of course, is without our province. All that we may—or are required to—find here is that the law officer should have instructed the members of the court on the elements of the lesser offenses of unpremeditated murder and voluntary manslaughter. Of course, his reference to appropriate Manual provisions could not have operated to cure the deficiency in the instructions given. United States v. Gilbertson (No. 318), 4 CMR 57, decided July 22, 1952; United States v. Cromartie (No. 374) 4 CMR 143, decided August 6, 1952; United States v. Strong (No. 244), 5 CMR 55, decided August 27, 1952; United States v. Moreash (No. 715), 5 CMR 44, decided August 27, 1952; United States v. Kubel (No. 229), 5 CMR 73, decided August 29, 1952. This failure on the part of the law officer constitutes prejudicial error—for it is wholly impossible to appraise the effect of omission of instructions as to the lesser offenses enumerated earlier in this paragraph. United States v. Ollie Williams (No. 251), 2 CMR 137, decided March 14, 1952; United States v. Sheehan (No. 776), 4 CMR 124, decided August 6, 1952; United States v. Avery (No. 809), 4 CMR 125, decided August 6, 1952; United States v. Lookinghorse (No. 1124), 5 CMR 88, decided August 29, 1952; United States v. Lowery (No. 683), 8 CMR 115, decided this date.

It has been urged that we purge the instructional error in the present case by affirming the conviction in so far as it involves guilt of the lowest of the lesser offenses raised by the evidence adduced below. The doubts we had entertained concerning our power to follow this course were resolved in its favor in United States v. Hunter (No. 359), 6 CMR 37, decided October 17, 1952. See also House Report No. 491 on H. R. 4080, 81st Cong., 1st Sess, at page 29. We do not doubt that the error presented by a failure to instruct as to lesser included offenses may be expunged by an appellate body's affirmance of the lowest of the lesser offenses fairly raised by the evidence, since the accused would thereby have the benefit of the most he could expect from proper instructions. Whether we thus affirm in a particular case clearly rests within our sound discretion—for Article 59(b) of the Code, 50 USC § 646, is phrased in permissive terms only. At this point it would not be amiss for us to state parenthetically that—in view of our want of fact-finding power—we will doubtless exercise sparingly our power in this particular, reserving it for cases presenting a clear and clean-cut difference between the offense of which the accused was found guilty and another as to which it may be said as a matter of law that the evidence indicates guilt. The present case is of this sort, because, on rehearing, accused could be convicted only of unpremeditated murder or voluntary manslaughter.

Accordingly, the decision of the board of review here is affirmed in so far as it extends to guilt of voluntary manslaughter, and the record is returned to The Judge Advocate General, United States Army, for reference to the board of review for reconsideration of appropriateness of sentence.

Chief Judge QUINN and Judge LATIMER concur.